UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LORENZO CHAPMAN,

                Plaintiff,

      v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                Defendant.
_____

**DECISION
and
ORDER**

**19-CV-433F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                          Attorneys for Plaintiff
                          KENNETH R. HILLER, and
                          CORINNE MARIE MANFREDI, of Counsel
                          6000 North Bailey Avenue
                          Suite 1A
                          Amherst, New York  14226

                          JAMES P. KENNEDY, JR.
                          UNITED STATES ATTORNEY
                          Attorney for Defendant
                          Federal Centre
                          138 Delaware Avenue
                          Buffalo, New York  14202
                                  and
                          JILLIAN ERIN NELSON
                          Special Assistant United States Attorney, of Counsel
                          Social Security Administration
                          Office of General Counsel
                          26 Federal Plaza
                          Room 3904
                          New York, New York  10278
                                  and

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

AMY ELIZABETH HAWKINS MORELLI
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of General Counsel
61 Forsyth Street, S.W.
Suite 20T45
Atlanta, Georgia  30303

## JURISDICTION

On August 5, 2020, this matter was assigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 14).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 9, 2019 (Dkt. 8), and by Defendant on November 15, 2019 (Dkt. 11).

## BACKGROUND

Plaintiff Lorenzo Chapman ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed on June 29, 2015 with the Social Security Administration ("SSA"), for Social Security Supplemental Income ("SSI") under Title XVI of the Act ("disability benefits").  Plaintiff alleges he became disabled on May 13, 2015, based on two herniated discs in his neck, three herniated discs in his back, a broken wrist, and a separated shoulder.  AR[2] at 206, 213, 227, 232.  Plaintiff's application initially was denied on September 25, 2015, AR at 120-36, and at Plaintiff's timely request, AR at

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on July 12, 2019 (Dkt. 6).

139-41, on January 24, 2018, a hearing was held in Buffalo, New York via video conference before administrative law judge Michael Carr ("the ALJ"), located in Alexandria, Virginia. AR at 91-119 ("administrative hearing"). Appearing and testifying at the administrative hearing were Plaintiff, represented by Justin Goldstein, Esq. ("Goldstein"), and vocational expert Ray O. Burger ("the VE").

On May 18, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 9-26 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 202-04. On February 6, 2019, the Appeals Council denied Plaintiff's request for review, AR at 1-6, rendering the ALJ's Decision the Commissioner's final. On April 3, 2019, Plaintiff commenced the instant action in this court seeking judicial review of the ALJ's Decision.

On September 9, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 8) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Administrative Record (Dkt. 8-1) ("Plaintiff's Memorandum"). On November 15, 2019, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 (Dkt. 11-1) ("Defendant's Memorandum"). Filed on December 6, 2019 was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; and the matter is REMANDED to the Commissioner for further proceedings consistent with this Decision and Order.

## **FACTS**[3]

Plaintiff Lorenzo Chapman ("Plaintiff" or "Chapman"), born April 3, 1970, was 45 years old as of May 13, 2005, his alleged disability onset date ("DOD"), and 48 years old as of May 18, 2018, the date of the ALJ's Decision. AR at 22, 206, 213, 227, 232. As of the administrative hearing, Plaintiff lived with a friend in an apartment. AR at 101.

Plaintiff attended regular classes in high school and graduated but has not completed any specialized job training, trade, or vocational school. AR at 233. Plaintiff has a driver's license and can drive a car. AR at 245. Plaintiff's work history includes working as a customer service representative for a benefits enrollment/call center, maintenance supervisor in construction, and as an assistant manager supervising five other employees at a Rent-A-Center. AR at 96, 233. Plaintiff last worked on March 15, 2009 when he was terminated from his employment at Rent-A-Center. AR at 232.

On a Function Report – Adult completed in connection with his disability benefits application, Plaintiff indicated his impairments interfere with Plaintiff's ability to perform such household chores as taking out the trash and washing dishes, AR at 242, and performing such personal care as bending over to tie his shoes and put on pants, as well as reaching all parts when bathing. AR at 242-43. Plaintiff's impairments have not limited his ability to handle money, including paying bills, counting change, and handling a savings account. AR at 246. Plaintiff's hobbies and interests included bowling and playing cards which he used to enjoy every weekend but can no longer do. AR at 246. Plaintiff engages in daily conversations with others and reports no problems getting along with others. AR at 246-47. Plaintiff maintains he can only sit or stand for 20 to 30

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

minutes at one time, is unable to lift, cannot walk long distances, has difficulty climbing stairs, and can't kneel or squat, but has no difficulty reaching, using his hands, seeing, hearing, or talking. AR at 247-48. Plaintiff is right-hand dominant and uses crutches and a cane for assistance ambulating. AR at 248. After walking 50 feet, Plaintiff has to rest for a couple of minutes. AR at 248. Per his report, Plaintiff has no trouble paying attention, finishing what he starts, following written or spoken instructions, or getting along with others. AR at 248-49. Plaintiff describes his lower back pain as "stabbing and piercing" but denies the pain radiates into other places. AR at 249. Plaintiff maintains his pain is constant and is present regardless of whether he is sitting, standing, walking or laying down. AR at 250. For pain relief, Plaintiff takes Horizant (for nerve pain), and amitriptyline (neuropathic pain), which medications Plaintiff asserts did not help alleviate his pain symptoms. AR at 250. Plaintiff also treats his back pain with chiropractic care and wears a back brace. AR at 251.

    Plaintiff attributes his back pain to a May 13, 2015 accident when Plaintiff was struck on the left side of his body by a vehicle while walking ("the pedestrian accident"), and was taken by ambulance to the emergency department of Niagara Falls Memorial Medical Center with complaints of pain in his neck, left hip, and left ankle, AR at 358, and later reported he hit his head and left wrist pain. AR at 361. Plaintiff had multiple contusions and radiology imaging showed Plaintiff fractured his left wrist and ankle. AR at 360-63. On May 18, 2015, Plaintiff commenced treatment at Excelsior Orthopaedics, LLC, where Plaintiff was treated by orthopaedist Timothy V. McGrath, M.D. ("Dr. McGrath") who concurred that Plaintiff had fractured left wrist and ankle, and also diagnosed a separated left shoulder. AR at 336-56. On May 20, 2015, Plaintiff

commenced treatment at Wheatfield Family Chiropractic with chiropractor Kevin Skowronek, D.C. ("Dr. Skowronek"), for complaints of back and neck pain Plaintiff attributed to the pedestrian accident.  AR at 406-07, 447-583.  On June 12, 2015, cervical spine MRI showed herniation at C4-C5, annular bulge resulting in canal narrowing at C3-C4, and neural foraminal narrowing at C3-C4, C4-C5, C5-C6, C6-C7, and C7-T1, AR at 305-06, and lumbar spine MRI showed herniations at L4-L5 and L5-S1, and neural foraminal narrowing at L2-L3, L3-L4, L4-L5, and L5-S1.  AR at 307-08.  From June 11, 2015 through August 31, 2015, Plaintiff attended physical therapy at Pinnacle Orthopedic and Spine Specialists, AR at 642-98, and from June 15, 2015 through August 12, 2015, Plaintiff also attended physical therapy at Falcon Physical Therapy – NY.  AR at 310-35, 378-404.  On December 9, 2015, Plaintiff sought treatment at Spine Surgery of Buffalo Niagara, LLC where he treated with orthopedist Franco E. Vigna, M.D. ("Dr. Vigna"), AR at 584-640, who completed on December 19, 2017 a Listing 1.04 Disorders of the Spine Questionnaire (Dr. Vigna's opinion").  AR at 734-39.  Beginning March 31, 2016, Plaintiff also received chiropractic care from chiropractor Mark Delmonte, D.C. ("Dr. Delmonte") at Niagara Family Chiropractic Care.  AR at 54-90, 471-583, 720-28.  On October 25, 2017, cervical spine MRI showed no compression fracture, degenerative disc disease, a small, stable central posterior disc herniation at C4-C5, small posterior disc bulge at C5-C6, and stable, posterior disc-osteophyte complex mildly effacing the thecal sac and moderately narrowing the bilateral neural foramina at C6-C7, AR at 713-14, and lumbar spine MRI showed no compression fracture or spondylosthesis, and stable, small posterior disc bulges at L3-L4 and L4-L5.  AR at 715.  On December 27, 2017, Dr. Delmonte completed a Listing

1.04 Disorders of the Spine Questionnaire ("Dr. Delmonte's opinion").  AR at 741-46.  In connection with his disability benefits applications, on September 16, 2015, Plaintiff underwent a consultative medical examination with Hongbiao Liu, M.D. ("Dr. Liu") ("Dr. Liu's opinion").  AR at 443-47.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2.     Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

8

step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

      In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity ("SGA") since June 29, 2015, his alleged DOD, AR at 14, and suffers from the severe impairments of degenerative disc disease of the cervical and lumbar spine, a history of left wrist fracture, a history of left shoulder acromioclavicular (joint where

9

clavicle and scapula meet) separation, and hypertension, *id.*, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 13-14. The ALJ further found that despite his impairments, Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), but can only occasionally perform postural maneuvers, except he cannot climb ladders, ropes, or scaffolds, can occasionally reach overhead, can frequently handle and finger with the left upper extremity, cannot work at unprotected heights, requires use of a cane to ambulate, and, while remaining at a workstation, needs to alternate between sitting for two minutes after 30 minutes of standing or walking, and standing for two minutes after 30 minutes of sitting. AR at 15-20. Plaintiff is unable to perform any PRW, AR at 20, yet given Plaintiff's RFC, age, high school education, and ability to communicate in English, Plaintiff can perform jobs that exist in significant numbers in the national economy including representative occupations such as a charge account clerk, document clerk, and clerk cashier, all jobs identified by the VE in response to the ALJ's hypotheticals posed at the administrative hearing. *Id.* at 20-22. *See* AR at 114-15 (VE testimony). Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 22.

Plaintiff does not contest the ALJ's findings with regard to the first two steps of the five-step analysis, but argues that at the third step, the ALJ improperly rejected the opinions of treating physician Dr. Vigna and treating chiropractor Dr. Delmonte, both of whom opined Plaintiff meets the criteria for disability based on 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04 ("Listing 1.04") pertaining to disorders of the spine.

Plaintiff's Memorandum at 17-21.  Plaintiff further maintains that at step four, the RFC assessment is a product of the ALJ's lay judgment and is not supported by substantial evidence in the record.  AR at 22-28.  Defendant argues the ALJ properly rejected the opinions of Dr. Vigna and Dr. Delmonte as inconsistent with the record as a whole, Defendant's Memorandum at 8-14, and the ALJ's RFC assessment is supported by substantial evidence in the record.  AR at 14-18.  In reply, Plaintiff repeats his argument that the ALJ's "highly specific RFC determination" is based on the ALJ's lay judgment and is not supported by substantial evidence in the record.  Plaintiff's Reply at 1, 3 (citing *Heckman v. Comm'r of Soc. Sec.*, 2019 WL 1492868, at * 4 (W.D.N.Y. Apr. 4, 2019)).  There is no merit to Plaintiff's argument regarding the opinions of Dr. Vigna and Dr. Delmonte finding Plaintiff meets the requirements for disability based on Listing 1.04, but as discussed, Discussion, *infra*, at 14-16,  the ALJ's "highly specific RFC determination" regarding Plaintiff's need to sit for two minutes after standing or walking for 30 minutes and to stand for two minutes after sitting for 30 minutes, as well as the ALJ's determination that Plaintiff does not need a cane for balance, are not supported by substantial evidence in the record, but are the result of the ALJ's own surmise requiring remand.

      Specifically, with regard to the ALJ's consideration of the opinion evidence in the record, Dr. Vigna is Plaintiff's treating orthopedist and Dr. Delmonte is Plaintiff's treating chiropractor.  Under the "treating physician rule," for disability benefits claims filed, like the instant claim, prior to March 27, 2017, an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable

11

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted). Where, however, an ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). The failure to provide good reasons for rejecting a treating physician's opinion is grounds for remand. *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician opinion and we will continue remanding when we encounter opinions from ALJ's [*sic*] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). Further, the opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Genier v. Astrue*, 298 Fed.Appx. 105, 108 (2d Cir. 2008) ("If the treating physician's opinion is well-supported by other medical evidence, then it is given controlling weight." (citing 20 C.F.R. 416.927(d)(2))). Treating physician opinions, however, are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence. 20 C.F.R. §§

404.1527(d), 316.927(d); *Halloran*, 362 F.3d at 32 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Insofar as Plaintiff's argument focuses on similar findings in Dr. Vigna's opinion and Dr. Delmonte's opinion that Plaintiff meets the criteria for disability under Listing 1.04 pertaining to disorders of the spine, AR at 734-39 (Dr. Vigna's opinion), 741-46 (Dr. Delmonte's opinion), opinions that are dispositive of a case, such as whether a claimant is disabled or that a claimant meets a Listing which ordinarily requires finding the claimant is disabled "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 416.927(d)(1) (opinion that claimant is disabled is for the Commissioner who need not accept such opinion even when rendered by a medical source), and (2) (Commissioner is not required to accept medical source's opinion that claimant meets the requirements of any particular impairment in the Listing of Impairments).  As relevant here, disability based on disorders of the spine can be established upon a diagnosis of degenerative disc disease, which Plaintiff undeniably has, but must be accompanied by one of the following: (1) nerve root compression, (2) spinal arachnoiditis (pain disorder caused by inflammation of arachnoid membrane surrounding and protecting the nerves of the spinal cord), or (3) lumbar spinal stenosis resulting in pseudoclaudication (intermittent leg pain from impingement of the nerves emanating from the spinal cord).  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.  Here, Plaintiff's medical records are devoid of evidence establishing Plaintiff's degenerative disc disease is accompanied by any one of the three additional criteria to

establish disability under Listing 1.04, and Plaintiff does not argue otherwise. Accordingly, the ALJ did not err at step 3 in rejecting the opinions of Dr. Vigna and Dr. Delmonte that Plaintiff meets Listing 1.04 disability criteria.

Nor did the ALJ err in rejecting several of the limitations imposed in both opinions, including significant limitations to Plaintiff's use of his upper extremities, AR at 737 (Dr. Vigna opining Plaintiff was limited to using his hands and fingers only 20% of an 8-hour work day, and his arms only 5-10% of an 8-hour workday), 744 (Dr. Delmonte opining Plaintiff could never use his arms during an 8-hour workday).  Not only is there no objective evidence in the record supporting such restrictions but, as the ALJ found, AR at 20, such limitations are inconsistent with other evidence in the record including Dr. Liu's consultative examination showing Plaintiff with hand and finger dexterity intact and grip strength 5/5 bilaterally, AR at 445, and assessing Plaintiff with only a moderated limitation to overhead reaching.  AR at 446.  Significantly, the consultative physician's report may constitute substantial evidence, *Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence." (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)), and the Second Circuit will "defer to the Commissioner's resolution of conflicting evidence."  *Cage v. Commissioner of Social Security*, 692 F.3d 118, 122 (2d Cir. 2012).  The ALJ thus did not err in rejecting the opinions' unsupported portions.

Additionally, because Dr. Delmonte is a chiropractor, he does not qualify under the regulations as a medical source and, as such, the treating physician rule does not apply to his opinion even though Plaintiff's claim was filed prior to March 27, 2017.  *See*

20 C.F.R. §§ 416.902(a), 416.013, and 416.927.  Although "the ALJ is certainly free to consider the opinion of [other medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician."  *Genier,* 298 Fed.Appx. at 108.  Accordingly, the ALJ did not err at the third step by failing to accept the opinions of Dr. Vigna and Dr. Delmonte that Plaintiff meets the disability requirements for Listing 1.04 as well as the restrictions to Plaintiff's use of his upper extremities.

Nevertheless, the ALJ's determination of Plaintiff's "highly specific" RFC assessment that Plaintiff would need to sit for two minutes after standing or walking for 30 minutes, and to stand for two minutes after sitting for 30 minutes, AR at 15, is not sufficiently supported by substantial evidence in the record, requiring remand.  In particular, "the ALJ cannot arrive at specific limitations that do not appear anywhere in that evidence."  *Heckman*, 2019 WL 1492868, at * 4 (citing *McBrayer v. Sec'y of Health and Human Services*, 712 F.2d 795, 799 (2d Cir. 1983)).  Although the ALJ's RFC finding is not defective merely because it does not perfectly correspond to a particular medical opinion, *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013), "when the record must contain at least <u>some</u> evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation."  *Heckman*, 2019 WL 1492868, at * 4 (underlining added) (citing *Palistrant v. Comm'r of Soc. Sec.*, 2018 WL 4681622, at *5 (W.D.N.Y. Sept. 28, 2018) (holding claimant's testimony he had to alternate between sitting and standing every 20-30 minutes and general treatment notes about sitting and standing limitations supported RFC determination that the claimant needed to alternate between sitting and standing every half hour); *Bryant v. Berryhill*, 2017 WL 2334890, at

*4 (W.D.N.Y. May 30, 2017) (holding "several refences in the record," including the claimant's conflicting reports about the length of time he could sit or stand—some indicating 10 to 15 minutes at a time and others indicating 30 minutes at a time—allowed the ALJ to "reasonably conclude[ ] that [claimant] could sit for 30 minutes and stand for 15 minutes")).  In contrast, in the instant case, nowhere in the record is there any evidence that Plaintiff, after standing or walking for 30 minutes, needed to sit for two minutes, and that after sitting for 30 minutes, needed to stand for two minutes.  Rather, the evidence in the record addressing this limitation, including the opinions of Dr. Vigna and Dr. Delmonte, is that Plaintiff must walk for five to ten minutes after sitting or standing for 20 to 30 minutes.  AR at 736-36, 742-43.  The ALJ's "highly specific" RFC assessment represents the ALJ's "own surmise," Plaintiff's Memorandum at 22 (citing *Cosnyka v. Colvin*, 576 Fed.Appx. 43, 46 (2d Cir. 2014), and 23 (citing *Heckman*, 2019 WL 1492868, at * 4), not based on evidence in the record, requiring remand.  *Cosnyka*, 576 Fed.Appx. at 46 (lack of any evidence supporting the ALJ's determination that the claimant could perform sedentary work if he took a six-minute break every hour, rather than some other duration, and the ALJ's formulation of the RFC was crucial to the ALJ's conclusion that jobs existed the claimant could perform  requiring remand to the Commissioner for further development of the record).  Plaintiff's motion thus is GRANTED on this argument.

    The court also addresses Plaintiff's argument, Plaintiff's Memorandum at 15, that the ALJ erred in rejecting that portion of Dr. Liu's opinion rendered in connection with the September 16, 2015 consultative examination of Plaintiff that Plaintiff needed to use a cane both for ambulation and balance.  AR at 444.  Use of a cane for balance may

interfere with a claimant's ability to perform work-related tasks, relevant to a proper RFC determination, while standing and holding a cane. *See DiFrancesco v. Comm'r of Soc. Sec.*, 2020 WL 467720, at * 3 (W.D.N.Y. Jan. 29, 2020) (citing *Vanever v. Berryhill*, 2018 WL 4266058, at * 2 (W.D.N.Y. Sept. 6, 2018)). Significantly, Plaintiff, who is right-hand dominant, AR at 248, uses the cane in his right hand. AR at 100. Although the ALJ rejected as contrary to treatment notes in the record that portion of Dr. Liu's opinion that Plaintiff's use of "the cane is medically necessary to keep balance and limit pain," AR at 19 (citing AR at 598, 617), at least one of Dr. Vigna's treatment notes shows Plaintiff uses the cane not only for ambulation, but also to stand because of concern his left hip will "give out." AR at 598. Further, in his opinion, Dr. Vigna lists Plaintiff's use of a cane as a positive objective sign of Plaintiff's pain and does not specify the cane is used only for ambulation. AR at 735. Accordingly, the ALJ's determination that Plaintiff uses the cane only for ambulation is not supported by substantial evidence in the record, and because Plaintiff uses the cane in his dominant right hand, thus limiting Plaintiff's use of his right hand in assessing Plaintiff's RFC, *DiFrancesco*, 2020 WL 467720, at * 3, Plaintiff's motion is GRANTED on this argument with the matter also REMANDED to the Commissioner for further development of the record as to whether Plaintiff requires a cane for balance and, if so, whether such use will affect Plaintiff's ability to perform SGA.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 8) is GRANTED; Defendant's Motion (Dkt. 11) is DENIED; the matter is REMANDED to the Commissioner for further proceedings consistent with this Decision and Order.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   September 24th, 2020
         Buffalo, New York